## HARVE OLLER v. STATE.

No. A-7228.  Opinion Filed May 24, 1930.
(288 Pac. 494.)

John W. Tillman, Fred A. Tillman, and Welcome D. Pierson, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was jointly tried with Roy Morrison on a charge of larceny of two head of cattle, was convicted, and sentenced to serve a term of imprisonment in the state penitentiary for a period of two years, from which judgment the defendant Harve Oller has appealed.

The testimony, in substance, is that Cecil Drummond, on the 29th day of February, 1928, on his place in Osage county, near that of Floyd Oller, had a herd of mixed cattle, mostly yearlings and some coming twos, most of which were white-face Hereford cattle; on about March 4th he saw two heads at Floyd Oller's place; Frank Wooten and Horace Burkhart had charge of the cattle; that no one had consent to take any of his cattle; that on March 6, 1928, the employees found this herd was seven head short. Witness stated the heads he saw were heads of whiteface Hereford cattle; the ears had been cut off close to the head; one showed to be a muley or dehorned yearling.

The testimony on behalf of the state further tends to show that the two defendants came to the house of Floyd Oller and procured two horses from Chick Bounds, and then rode away and brought back and butchered an animal, and later got another yearling and butchered it at the same place; there was some conversation took place between the defendants and witness Bounds as to the beef being wet; that on the trip afterwards to the Oller place they were accompanied by the state witness, at whose butcher shop the heads were taken in an effort to identify them.

W. W. Thomason, an Indian enforcement officer, and C. E. Livesay, with another officer by the name of Lancaster, and George Sutton went to the home of the defendant Morrison without a search warrant, and by accident saw some of the meat hanging up in the barn, and afterwards Thomason and Livesay went with him to the home of Harve Oller and found some meat in the garage; that afterwards they procured a search warrant and seized the meat, and the defendants were arrested. Thomason testified that the defendant told him, in answer to interrogatories, that he had gotten the meat from Floyd Oller.

The testimony further shows that, after the defendants were arrested and taken to the office of the county attorney of Osage county, they were interrogated and their testimony and statements reduced to writing. These statements were not introduced in evidence, but were used for cross-examination of the defendant Oller, by which it was sought to prove that he had made contradictory statements and given different testimony from his testimony on the stand.

Frank Wooten, an employee of the witness Drummond, stated that the Drummond cattle were about three-fourths of a mile north of the Floyd Oller place; Sunday March 4th, he was at Floyd Oller's with Drummond and Horace Burkhart and saw two calves' heads seventy-five or a hundred yards southeast of the house; they were white-faced long-aged calves; looked like they had been dehorned about a month or six weeks ago; he assisted in dehorning the Drummond cattle in December; the ears were cut off of these two heads; they looked like the same cattle and same age as Drummond's; "I took the heads to Fairfax and turned them over to Bolton on the 6th day of March; Burkhart and I counted the Drummond cattle about the 15th day of February and there were 448; we counted them again on March 6th, and there were 442 head; that he saw the two heads of the calves at the butcher shop, and the ears were cut off close to the head; Floyd Oller had one bunch of his cattle west of his house and a little bit northwest; Drummond's pasture was north of Oller's house.

The substance of the defendant's testimony is as follows: That Harve Oller is the uncle of Floyd Oller; he had known Morrison two or three years; Floyd Oller was pasturing cattle in Osage county near Ralston; that in

his herd were several different kinds of cattle, red and white faced cattle.

Harve Oller testified that he had often butchered some of Floyd Oller's cattle when he was out of meat; that Ray Morrison, George Hartzell, and Myrle Hamm went to Floyd Oller's place about sundown on the date alleged in the information to butcher some cattle; they went late for the reason that Roy Morrison worked until 5 o'clock in the afternoon for Fred Marshall; they butchered two yearlings the property of Floyd Oller; they procured the services of Chick Bounds to gather the cattle, and, after they had butchered the two yearlings, they left the heads, together with the entrails, where they had butchered; the yearlings they butchered were branded seven on the left hip; the hides were so badly cut up they were worthless and were thrown into the river; the defendant hung his meat in a garage opening toward the street in Ralston; they did not steal any cattle from Cecil Drummond; the cattle belonged to Floyd Oller.

Roy Morrison testified substantially the same as did the defendant Harve Oller. Ray Pritchard testified on behalf of the defendant, and stated that while out hunting he found the two cattle heads south of Floyd Oller's and cut off the ears to encourage his hunting dogs to go home with him.

George Hartzell testified that the hides were worthless and were thrown in the Arkansas river from the bridge; he was the last one to leave the place where the yearlings were butchered and he saw no one cut the ears off the head.

Floyd Oller testified for the defendant, and stated he had 205 head of cattle of all kinds, including white-faced red Herefords, about 65 head of which were in the

stalk fields northwest of his house; some were branded seven, and some seventy-one on the left hip; that he was not at home the night the cattle were butchered; Harve Oller was his uncle.

On cross-examination, the witness was asked the following question:

"Q. Did you ever have any conversation with Harve Oller or Ray Morrison with reference to going out to your place and killing some cattle out there? A. No, sir."

Myrle Hamm testified they went to the Floyd Oller place and butchered the cattle; they left a quarter of the beef at Oller's place; he did not see or know of any one cutting the ears off the heads of the cattle they butchered.

This is, in substance, the testimony on the part of the state and the defendant.

The defendant in his petition assigns twenty errors alleged to have been committed in the trial of his case. The defendant in his brief has presented and argued the question of the sufficiency of the evidence to warrant a conviction, and argues that this case is almost entirely upon circumstantial evidence, and that the direct testimony is as consistent with the defendant's innocence as it is with his guilt. A reference to the case-made will show that the Drummond cattle were counted on the 15th day of February, 1928, and there were 448 head at the time; that on the 29th day of February, 1928, the night of the alleged larceny, the cattle were in his pasture some distance north of Floyd Oller's place; that on the 6th day of March, 1928, the Drummond cattle were again counted, and at this time there were 442, there being six less than there were on the 15th day of February, 1928; the heads of the calves that were butchered by the defendant, Harve Oller, and others with him, are shown to be the same class

and kind of yearlings as those owned by Drummond; the ears of both these heads had been cut off close to the head, and the hides taken off these calves were stated to have been badly injured, so as to be considered utterly worthless. The testimony tends to show that these hides were placed in a sack at the place where the yearlings were butchered and taken in George Hartzell's car to the bridge over the Arkansas river and thrown in the river. There is some testimony showing that a conversation was had at the time the yearlings were butchered about putting the ears of the yearlings butchered in the sack with the hides.

Ray Pritchard testified to coming along about daylight, and that he cut the ears off of these heads for the purpose of encouraging his dogs to follow him, but that he did not cut them very close to the head. The reason given for butchering these calves in the nighttime is that Roy Morrison did not get off from work until 5 o'clock in the afternoon, and that by the time he drove out to the Floyd Oller place it was getting dark. The testimony of Floyd Oller shows that the defendant in this case had not discussed with him the question of butchering any of his cattle, and that he was not at home at the time the defendant and other parties who came with him came to the Floyd Oller place and butchered these cattle, and he knew nothing about the cattle, and did not testify that any of his cattle were missing about the time these calves were butchered. No question was asked Floyd Oller by the defendant as to whether or not he missed any of his cattle.

The defendant complains of the seventh instruction given by the court upon the question of circumstantial evidence. This instruction complained of by the defendant is not a model, but, when considered in connection with the evidence in this case and the other instructions, it substantially instructed the jury as to the law as applied

to the facts in the case. We have read the record in this case and carefully studied the testimony and reviewed the facts and circumstances as they appear in the record, and we hold that the testimony is sufficient to sustain the judgment. The fact that the calves were butchered at night and the meat distributed or secreted, and that the hides were thrown in the Arkansas river, are strong circumstances tending to show that the defendants desired to conceal their action and to prevent the identity of the calves that had been butchered by them.

There is no error in the record of sufficient merit to justify this court in reversing the same.

The judgment is affirmed.

EDWARDS, P. J., concurs. CHAPPELL, J., not participating.